UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELIZABETH MARIE FITZGERALD JOHNSON, | } } } |
| Plaintiff, | } } |
| v. | } Case No.: 2:13-cv-00512-MHH } |
| UNIVERSITY OF ALABAMA HEALTH SERVICES FOUNDATION, PC, | } } } } } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Elizabeth Marie Fitzgerald Johnson worked for defendant University of Alabama Health Services Foundation (UAHSF) as a medical record specialist at UAHSF's Spain McDonald Clinic. She organized and maintained patients' paper records. UAHSF asserts that it eliminated Ms. Johnson's position when the clinic transitioned from paper records to electronic records. Ms. Johnson contends that UAHSF terminated her because she was pregnant and because she has a hearing impairment. Ms. Johnson asserts discrimination claims against UAHSF under the Americans with Disabilities Act and under Title VII of the Civil Rights Act of 1964. She also asserts that UAHSF retaliated against her in violation of the Americans with

Disabilities Act because she requested a disability accommodation.[1]  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, UAHSF asks the Court to enter judgment as a matter of law in its favor on Ms. Johnson's three claims.  (Doc. 26).  For the reasons explained below, the Court will grant UAHSF's motion.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).   When considering a summary judgment motion, the Court "must view the facts in the light most favorable to the nonmoving party" and "must also draw all reasonable inferences in favor the part opposing

---

[1] Ms. Johnson's second amended complaint also contained claims for Title VII hostile work environment on the basis of pregnancy, Title VII retaliation on the basis of pregnancy, ADA hostile work environment on the basis of disability, FMLA interference, and FMLA retaliation. The Court dismissed these claims on September 16, 2014 consistent with the parties' joint stipulation of dismissal. (*See* Doc. 24).

summary judgment." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (internal citations and quotation marks omitted).

## II.     RELEVANT FACTS

### A.     Ms. Johnson's Hearing Impairment

Ms. Johnson has a hearing impairment. It is undisputed that when she began working at UAHSF's Spain McDonald Clinic, administrators in the clinic were aware of the hearing impairment.

In November 2010, the clinic was in need of a full-time medical records specialist. The clinic's administrative supervisor, Alesia Morton, interviewed Ms. Johnson for position. (Doc. 26-1, pp. 9-10). During the interview, Ms. Morton learned that Ms. Johnson has a hearing impairment. (Doc. 26-1, p. 10; Doc. 30-1, p. 17). Ms. Johnson asked if she would have to answer telephones if Ms. Morton hired her for the records specialist position. Ms. Morton replied, "No, the nurses and girls at the front will answer the phone." (Doc. 26-1, p. 10). Ms. Morton hired Ms. Johnson as the clinic's medical records specialist. (Doc. 26-2, ¶ 3).

As a medical records specialist, Ms. Johnson handled paper records. She pulled patients' charts for appointments and filed paperwork. (Doc. 26-1, pp. 10, 13, 77-80; Doc. 30-1, p. 16). Although she did not have to answer telephone calls on a regular basis, Ms. Johnson did have to call doctors' offices to respond to requests for information regarding patient records. (Doc. 26-1, pp. 13, 61; Doc. 30-1, p. 24, 70).

To assist Ms. Johnson with her telephone responsibilities, Ms. Johnson's co-workers tried to find a special phone that might accommodate her hearing impairment. (Doc. 26-1, p. 18). While waiting on the special phone to arrive, Ms. Johnson did not have to make or receive calls for the clinic. (Doc. 26-1, pp. 34-35). When the special phone arrived, Ms. Johnson tried it but found that the phone did not help her.

Ms. Morton contacted Sherri Moultrie, UAB's Human Resources Disability Representative, to investigate what other options might be available. (Doc. 30-1, pp. 29-30). In December 2010, Ms. Johnson asked Ms. Moutrie for a special phone, and Ms. Morton and Ms. Moultrie tried to locate an alternative telephone system that would enable Ms. Johnson to handle telephone calls. (Doc. 26-1, pp. 34-35, 51; Doc. 30-4, p. 3). Over a number of months, Ms. Johnson communicated with Ms. Moultrie about these efforts. (Doc. 26-1, p. 125; Doc. 30-1, p. 26; Doc. 30-4, pp. 1-3).

On May 13, 2011, Ms. Moultrie emailed Ms. Johnson and explained that the university's audiologist had reviewed Ms. Johnson's audiogram and concluded that because of the severity of her hearing impairment, there were limited options for accommodation. The email states:

> Based solely on the audiogram you've shared, the [a]udiologist shared that you may have difficulty hearing accurately on any phone due to the severity of hearing loss. She also thought you could probably carry on a conversation relatively well with people you know or people who speak slowly and don't have a strong accent, but due to your level of hearing loss and degree of disability you could not be expected to always accurately receive information.

4

> If communicating via phone is [a] critical part of your job, then using Sprint webCaptel may be an option. It provides captioning to calls with use of a high speed internet connection. I'm researching the Sprint webCaptel and will follow up with your supervisor.

(Doc. 26-1, p. 125; Doc. 30-4, pp. 1-2). Ms. Johnson acknowledges that neither Ms. Morton nor Ms. Moultrie was opposed to trying the Sprint webCaptel captioning system, and Ms. Johnson was willing to use the captioning system. (Doc. 29, p. 11) (citing Doc. 30-1, p. 29).

### B. Ms. Johnson's Pregnancy

In November 2011, Ms. Johnson learned that she was pregnant. Her doctor told her that she could not lift more than 15 or 25 pounds. Ms. Johnson gave Ms. Morton a note that confirmed this restriction. (Doc. 26-1, p. 25). According to Ms. Johnson, Ms. Morton wanted her to shift charts that "were more than what the doctor wanted [Ms. Johnson] to do." (Doc. 26-1, p. 25). Ms. Morton wanted Ms. Johnson to move charts "as soon as possible" and "as fast as [Ms. Johnson could], on top of other duties that [Ms. Johnson] had to do." (Doc. 26-1, pp. 26-27). Specifically, Ms. Morton instructed Ms. Johnson "to organize the number and then shift it in; move the chart[s], so that way they could have more [room] in the back for new patient [] [charts]." (Doc. 26-1, p. 28). When Ms. Johnson suggested that the clinic's part-time medical records specialist help her complete the task, Ms. Morton responded that the part-time records specialist should have "nothing to do with it" and that Ms. Johnson should "do it by [herself]." (Doc. 26-1, p. 26).

5

Ms. Johnson admits that Ms. Morton never specifically instructed her to lift more than 15 pounds at a time. (Doc. 26-1, p. 27). Ms. Morton only stated that Ms. Johnson should grab a handful of charts. (Doc. 26-1, p. 28). After Ms. Johnson's doctor told her not to more than 15 pounds, Ms. Johnson followed her doctor's instructions. (Doc. 26-1, p. 28).

According to Ms. Johnson, Ms. Morton gave her "a lot more hard time" after Ms. Morton learned that Ms. Johnson was pregnant. (Doc. 26-1, pp. 35-36). Ms. Johnson testified that she emailed UAHSF's human resources department a couple of times and complained that Ms. Morton was giving her a hard time. (Doc. 26-1, p. 29). Ms. Johnson cannot remember "word for word" what she told human resources. (Doc. 26-1, p. 29). The record reflects that on November 7, 2011, Ms. Johnson emailed UAHSF education specialist Rebecca Hardin and reported that she (Ms. Johnson) was having "some issues with work and boss." (Doc. 26-4, p. 2, ¶ 3; Doc 26-4, p. 5). Ms. Hardin asked Ms. Johnson whether she had discussed the issues with her boss. (Doc. 26-4, p. 5). The record does not contain a response from Ms. Johnson to Ms. Hardin's email.

### C. Ms. Johnson's Termination

In June 2011, Nancy Masucci assumed responsibility for the clinic. Ms. Masucci was charged with finding ways to operate the clinic more efficiently. (Doc.

26-3, p. 2).[2]  To accomplish this goal, Ms. Masucci oversaw an effort to transition the clinic from paper records to electronic records.  (Doc. 26-3, pp. 2-3, ¶¶ 3-4; Doc. 30-1, p. 39).  Ms. Masucci also evaluated the clinic's personnel needs and determined that the clinic was overstaffed.  She decided to eliminate the full-time medical records position and replace it with a full-time certified medical assistant (CMA) position because a CMA has a medical certification and can handle medical and administrative duties.  (Doc. 26-3, pp. 3-4, ¶¶ 5-6, 8).  For example, in addition to maintaining medical records and checking in patients, a CMA can take a patient's vital signs, give a patient an injection, and call in a prescription.  (Doc. 26-3, p. 4, ¶ 9).

Ms. Johnson acknowledges that she does not have medical assistant training.  (Doc. 26-1, p. 8).  Consequently, she was not qualified for the new CMA position that replaced the full-time medical records position.  When Ms. Johnson learned in March 2012 that UAHSF was eliminating her position, Ms. Johnson met with Kathy Hayes in the UAHSF Employment Office to discuss other job openings at UAHSF.  (Doc. 26-1, pp. 14-15).  Ms. Johnson took a computer test to determine if she qualified for any other positions with UAHSF.  (Doc. 26-1, p. 31).  Ms. Hayes told Ms. Johnson that the only available positions for which Ms. Johnson was qualified were "a couple in the front desk that involve[d] the phone that could be very difficult for you."  (Doc.

---

[2]  Document 26-3 is Ms. Masucci's affidavit.  There is no deposition testimony from Ms. Masucci in the summary judgment record.  It appears that Ms. Johnson chose not to depose Ms. Masucci even though UAHSF identified Ms. Masucci as the individual who made the decision to eliminate Ms. Johnson's position at the clinic.

26-1, p. 31). Ms. Johnson told Ms. Hayes that special equipment was available that she (Ms. Johnson) could use to help operate a phone if needed. (Doc. 26-1, p. 32). Still, Ms. Johnson did not apply for the front desk openings or any other positions with UAHSF. (Doc. 26-1, p. 32).

### E. EEOC Charge and Lawsuit

On May 11, 2012, Ms. Johnson filed a charge of discrimination with the EEOC. (Doc. 26-1, p. 124). Ms. Johnson alleged that UAHSF discriminated against her because of her pregnancy and disability and retaliated against her because of her disability. (Doc. 26-1, p. 126). On February 23, 2013, the EEOC issued a notice of right to sue letter. (Doc. 26-1, p. 127). Ms. Johnson filed her lawsuit on March 17, 2013. (Doc. 1).

On this record, the Court considers UAHSF's motion for summary judgment.

## III. ANALYSIS

### A. Pregnancy and Disability Discrimination

Ms. Johnson contends that UAHSF fired her because of her pregnancy and because of her inability to answer telephone calls. Ms. Johnson pursues her pregnancy discrimination claim under Title VII. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex. *See* 42 U.S.C. § 2000e–2(a)(1). When it adopted the Pregnancy Discrimination Act, Congress amended Title VII to provide that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."

*Id.* at § 2000e(k); *see also Holland v. Gee*, 677 F.3d 1047, 1054 (11th Cir. 2012). The Pregnancy Discrimination Act also provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability to work." 42 U.S.C. § 2000e(k). "The analysis for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." *Holland*, 677 F.3d at 1054-55 (internal quotation marks and citation omitted). To prevail under Title VII, a plaintiff must show that her pregnancy "was a motivating factor" for an employment decision. 42 U.S.C. § 2000e–2(m).

Ms. Johnson pursues her claim that UAHSF discriminated against her because of her hearing loss under the ADA. "Title I of the ADA provides that employers shall not discriminate against qualified individuals on the basis of disability." *Smith v. Miami-Dade Cnty.*, 621 Fed. Appx. 955, 959 (11th Cir. 2015) (citing 42 U.S.C. § 12112(a). Discrimination includes termination. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees.").

Ms. Johnson attempts to establish her pregnancy and disability discrimination claims through circumstantial evidence.[3] Consequently, the Court must evaluate her

---

[3] In an employment discrimination action, a plaintiff may prove her claim through direct, circumstantial, or statistical evidence. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected

9

claims through the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *see Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2004) (pregnancy discrimination claims are analyzed under the same framework as Title VII sex discrimination claims); *Cusick v. Yellowbook, Inc.*, 607 Fed. Appx. 953 (11th Cir. 2015) (applying Title VII burden-shifting framework to ADA claims). If Ms. Johnson cannot identify a comparator or establish that UAHSF replaced her with someone outside of her protected class, Ms. Johnson may present "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin*, 655 F.3d 1321, 1328 (11th Cir. 2011).

If Ms. Johnson establishes a prima facie case, then the Court presumes that UAHSF acted illegally unless UAHSF articulates a legitimate, non-discriminatory reason for its action. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). UAHSF "need not persuade the court that it was actually motivated by the proferred reason, but need only present evidence raising a genuine issue of fact as to whether it discriminated against [Ms. Johnson]." *Id.* (internal citations omitted).

---

classification] are direct evidence of discrimination." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002) (internal quotations and citation omitted). In addition, statements by non-decisionmakers are not direct evidence. *Standard*, 161 F.3d at 1330. Ms. Johnson testified that no one told her that UAHSF terminated her employment because of her hearing impairment or because she was pregnant. (Doc. 26-1, pp. 40-41). Ms. Johnson has not offered evidence of blatant discriminatory remarks from a decisionmaker, so she may not rely on direct evidence to prove her claims. Ms. Johnson has offered no statistical evidence, so she must attempt to prove her claims with circumstantial evidence.

If UAHSF articulates a non-discriminatory reason for its decision, then the burden shifts back to Ms. Johnson to produce evidence that shows that UAHSF's "proferred reason was not its true reason, which merges with [Ms. Johnson's] ultimate burden of persuading the court that [UAHSF] intentionally discriminated [or retaliated] against [her]." *Id.* (internal quotations and citations omitted).

For purposes of this opinion, the Court assumes without deciding that Ms. Johnson has established a prima facie case of pregnancy and disability discrimination. UAHSF contends that it eliminated Ms. Johnson's position because the clinic was transitioning from paper to to electronic records, and the clinic no longer needed a full-time employee to handle paper records. This is a legitimate, non-discriminatory reason for eliminating Ms. Johnson's position. Therefore, to survive UAHSF's motion for summary judgment, Ms. Johnson must show that UAHSF's proffered explanation for the employment action "is false, and that discrimination was the real reason for the adverse action." *King v. Ferguson Enters., Inc.*, 568 Fed. Appx. 686, 689 (11th Cir. 2014) (citing *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.,* 446 F.3d 1160, 1163 (11th Cir. 2006)).

Ms. Johnson can demonstrate that the reason that UAHSF gave for eliminating her position was pretext "directly, by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder

11

could find them unworthy of credence.'" *Paschal v. United Parcel Serv.*, 573 Fed. Appx. 823, 825 (11th Cir. 2014) (quoting *Alvarez*, 610 F.3d at 1265). "If a plaintiff 'presents circumstantial evidence that creates a triable issue of fact concerning the employer's discriminatory intent,' she 'will always survive summary judgment.'" *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) (quoting *Lockheed-Martin*, 655 F.3d at 1328).

Ms. Johnson argues that UAHSF's decision to eliminate her position because of the transition to electronic records is pretext for discrimination because: (1) UAHSF has provided conflicting testimony regarding who made the decision to eliminate Ms. Johnson's position and who replaced Ms. Johnson; (2) the full transition to electronic records had not occurred when UAHSF eliminated Ms. Johnson's position in March 2012, and UAHSF could have employed Ms. Johnson through June 2012; (3) Ms. Johnson's position was the only position that UAHSF eliminated; (4) Ms. Sherill commented during the termination meeting that UAHSF needed someone to "take over the phone"; and (5) Ms. Morton required Ms. Johnson to lift charts that weighed more than Ms. Johnson's medical lifting restriction. (*See* Doc. 29, pp. 19-21, 24, 26-27). Based on its examination of the record, the Court finds no evidence to support Ms. Johnson's contention that UAHSF's proffered reason for her termination is pretext for discrimination.

For example, the record does not support Ms. Johnson's contention that UAHSF has provided conflicting information regarding the decision to eliminate her

12

position. UAHSF has maintained that Ms. Masucci made the decision to eliminate Ms. Johnson's position. Citing a series of emails between Ms. Morton and Ms. Singer, Ms. Johnson contends that Ms. Morton also was responsible for eliminating Ms. Johnson's position. In one email dated November 30, 2011 (the same month that Ms. Johnson told Ms. Morton that she was pregnant), Ms. Morton reported to Ms. Singer that due to the transition to electronic records, "it will be necessary for the clinic to reclassify the current Medical Record position held by Elizabeth Johnson to a PES position." (Doc. 30-5, p. 2). After confirming a January 30, 2012 severance date, Ms. Morton wrote to Ms. Singer on December 2, 2011: "I am making some changes here in the clinic over the next couple of weeks and I would like for those to have time to settle before this change happens." (Doc. 30-5, p. 1).

Ms. Johnson asks the Court to infer from these emails that Ms. Morton spearheaded the decision to eliminate Ms. Johnson's position. The emails do not support that inference. Ms. Morton's November 30, 2011 email does not say who made the decision to eliminate Ms. Johnson's position. The email indicates only that the clinic will reclassify Ms. Johnson's position. Ms. Morton's December 2, 2011 email likewise does not indicate who made the decision to eliminate Ms. Johnson's position. The email does not explain what changes Ms. Morton was making at the clinic and does not suggest that Ms. Morton was involved in the decision to eliminate Ms. Johnson's position. Rather, the string of emails between Ms. Morton and Ms. Singer suggest that Ms. Masucci was responsible for the decision to eliminate Ms.

13

Johnson's position. Ms. Morton's November 30, 2011 email states, "In talking with Nancy Masucci . . . we would like to make the [severance] effective Jan 20, 2012." (Doc. 30-5, p. 2). When Ms. Singer suggested that the severance should become effective at the end of a pay period, Ms. Morton proposed a different severance date "if Nancy [Masucci] agrees." (Doc. 30-5, p. 1).

Although the Court must construe all reasonable inferences in Ms. Johnson's favor, those inferences must be based on facts in the record. "Unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Ms. Johnson's suggestion that the emails from Ms. Morton demonstrate that she made the decision to eliminate Ms. Johnson's position is "mere conjecture, unsupported by any evidence or reasonable inference." *Id.* The undisputed testimony from Ms. Morton and Ms. Masucci is that Ms. Masucci made the decision to eliminate Ms. Johnson's position, and Ms. Morton did not learn about the decision to eliminate Ms. Johnson's position until it happened. No one consulted Ms. Morton before the decision was made. (Doc. 26-3, p. 3, ¶ 6; Doc. 30-1, pp. 43-45). Ms. Morton's emails to Ms. Singer do not undermine this sworn testimony. Therefore, there are no inconsistencies that provide circumstantial evidence to support Ms. Johnson's contention that her termination was motivated by discriminatory intent.

Likewise, Ms. Johnson's argument that UAHSF provided conflicting information about who would replace her is not persuasive circumstantial evidence of

14

pretext. Ms. Johnson maintains that during discovery, UAHSF stated that Ms. Davidson replaced Ms. Johnson, but Ms. Morton testified that no one replaced Ms. Johnson. (Doc. 29, p. 7; *See also* Doc. 30-1, p. 31; Doc. 30-2, p. 9). UAHSF's position is not inconsistent. The discovery Ms. Johnson cites is an interrogatory in which she asked UAHSF "who replaced Plaintiff (or assumed Plaintiff's responsibilities)? State the replacement's or replacements' name(s)." (Doc. 30-2, p. 9). UAHSF objected to the interrogatory because it "erroneously assumes that UAHSF placed another person in Plaintiff's position. . . . UAHSF eliminated Plaintiff's position and created a Certified Medical Assistant position, which was filled by Pamela Davidson." (Doc. 30-2, p. 9). Ms. Morton's testimony that UAHSF did not replace Ms. Johnson is consistent with UAHSF's discovery response. The record clearly establishes that UAHSF replaced Ms. Johnson's position with a different position, and Pamela Davidson filled the new position. The evidence is not inconsistent.

Ms. Johnson's second, third, and fourth arguments regarding pretext are not persuasive because Ms. Johnson merely quarrels with the wisdom and timing of UAHSF's decision to eliminate her position. Citing evidence in the record, Ms. Johnson argues that UAHSF could have allowed her to remain employed for several more months, that her position was the only one eliminated during the transition to electronic records, and that Ms. Sherill told her the position was eliminated because the clinic needed someone to answer the phone. When evaluating evidence and

arguments concerning pretext, the Court may not consider "the wisdom or accuracy of [the decision to eliminate a position] or whether the decision to [eliminate the position] was 'prudent or fair.'" *Alvarez*, 610 F.3d at 1266 (quoting *Rojas v. Florida*, 285 F. 3d 1339, 1342 (11th Cir. 2002)). Instead, the Court's "sole concern is whether unlawful discriminatory animus motivate[d]" UAHSF's decision to eliminate Ms. Johnson's position. *Rojas*, 285 F.3d at 1342.

In its position statement to the EEOC, UAHSF explained that although the clinic "arguably could have kept [Ms. Johnson] in her position until the [IMPACT] 'go live' date at the end of July [2012], [the clinic] chose another path. . . . Ms. Masucci opted to eliminate [Ms. Johnson's] position in March, bring the CMA on board and have other staff handle paper records in the interim." (Doc. 30-3, p. 5). Although Ms. Johnson's position was the only one that UAHSF eliminated in the clinic during the transition to electronic records, Ms. Masucci determined this change would best suit the clinic's needs. Ms. Sherill's comment to Ms. Johnson during her termination meeting that UAHSF needed someone to "take over the phone" must be considered in context of the balance of Ms. Sherill's explanation that the clinic needed someone to help the clinic "flow better." In context, Ms. Sherill's comments relate to the clinic's decision to replace Ms. Johnson's position with a new, different position. The Court "will not second guess [UAHSF's] business judgment, and [Ms. Johnson] cannot prevail by quarreling with the wisdom of a reason that might motivate a

reasonable employer." *King*, 568 Fed. Appx. at 688-89 (11th Cir. 2014) (citing *Chapman*, 229 F.3d at 1030).

Finally, Ms. Johnson's attempt to establish pretext through her argument that Ms. Morton required her to lift charts weighing more than fifteen pounds fails because Ms. Johnson's own testimony contradicts her assertion. Ms. Johnson admitted that Ms. Morton never specifically instructed her to lift charts weighing more than fifteen pounds. In addition, Ms. Johnson testified that after her doctor ordered her not to lift more than fifteen pounds, she obeyed those orders. (Doc. 26-1, pp. 27-28). Because Ms. Johnson complied with her doctor's orders and because there is no evidence that Ms. Morton disciplined Ms. Johnson for not lifting more charts, Ms. Johnson cannot demonstrate pretext based on her belief that Ms. Morton required her to lift charts weighing more than 15 pounds.

In sum, assuming Ms. Johnson has established a prima facie case of pregnancy or disability discrimination, she has not presented sufficient evidence to permit a reasonable trier of fact to conclude that UAHSF's proffered reason for eliminating her position is pretext for discrimination based on her pregnancy or disability. Therefore, the Court will enter judgment as a matter of law in favor of UAHSF on Ms. Johnson's pregnancy and disability discrimination claims.

### B. ADA Retaliation

The ADA prohibits retaliation against an individual because the individual has opposed conduct "made unlawful by [the ADA]" or because the individual "made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the adverse action and her protected expression." *Parker v. Economic Opportunity for Savannah-Chatham Cnty. Area, Inc.*, 587 Fed. Appx. 631, 633 (11th Cir. 2014) (citing *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997)).

Ms. Johnson engaged in a statutorily protected expression under the ADA when she requested a special phone. *See Meyer v. Sec'y, United States Dep't of Health & Human Servs.*, 592 Fed. Appx. 786 (11th Cir. 2014) (finding that the plaintiff's requesting a reasonable accommodation constitutes protected activity). The Court also assumes without deciding that Ms. Johnson's complaints to human resources that Ms. Morton was giving her a "hard time" and that she was having "some issues with work and [her] boss" constitute statutorily protected opposition under the ADA.[4]

---

[4] Because Ms. Johnson stated her complaints about Ms. Morton in general terms, the complaints may not constitute opposition under the ADA. *See Thampi v. Manatee Cnty. Bd. of Comm'rs*, 384 Fed. Appx. 983, 990 (11th Cir. 2010) (opposition "requires at least the disclosure of an individual's position on a matter"); *see also Demers v. Adams Homes of N.W. Fla., Inc.*, 321 Fed. Appx. 847, 852 (11th Cir. 2009) ("[T]o engage in protected activity, the employee must still, at the very least, communicate [his] belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred.") (internal quotations and citation omitted); *Brown v. City of Opelika*, 211 Fed. Appx. 862, 863-64 (11th Cir. 2006) (per curiam) (plaintiff did not engage in protected activity because the plaintiff "never voiced a complaint that the City was engaged in an unlawful employment practice."). For purposes of this decision, the Court does not need to resolve the issue.

18

Therefore, Ms. Johnson has established the first element of her prima facie retaliation claim.

The parties do not dispute that Ms. Johnson suffered an adverse employment action when UAHSF eliminated her position. Therefore, Ms. Johnson can satisfy the second element of a retaliation claim.

The final element of Ms. Johnson's retaliation claim is more problematic. An employee "may satisfy the causal connection element by showing that the protected activity and adverse action were 'not wholly unrelated.'" *Rudy v. Walter Coke, Inc.*, 613 Fed. Appx. 828, 830 (11th Cir. 2015) (quoting *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010)). "Generally, an employee can establish that these events were not wholly unrelated by showing that the decisionmaker was aware of the protected conduct at the time of the adverse action." *Id.* "Temporal proximity alone does not establish a causal connection when there is unrebutted evidence that the decisionmaker was not aware of the protected activity." *Id.*

Ms. Johnson has not demonstrated that Ms. Masucci was aware of the protected conduct when she eliminated the medical record specialist position at the clinic. *See Burch v. Coca-Cola Bottling Co United, Inc.*, 608 Fed. Appx. 916, 917 (11th Cir. 2015) (quoting *Brungart v. BellSouth Telecomms, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). Ms. Masucci did not know that Ms. Johnson complained to human resources. (Doc. 26-3, p. 5, ¶ 14). And Ms. Johnson has not presented evidence that indicates that Ms. Masucci knew that Ms. Johnson asked for a special telephone as an

accommodation.[5]  Without this evidence, Ms. Johnson cannot demonstrate that UAHSF's decision to eliminate her position was in retaliation for her request for an accommodation or for her complaints of discrimination.  *See Burch*, 608 Fed. Appx. at 917.  Accordingly, the Court will enter judgment as a matter of law in favor of UAHSF on Ms. Johnson's ADA retaliation claim.

## IV.   CONCLUSION

For the reasons discussed above, there is no genuine issue of material fact, and UAHSF is entitled to judgment as a matter of law on Ms. Johnson's pregnancy and disability discrimination claims and Ms. Johnson's disability retaliation claim.  The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 23, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[5] Because Ms. Johnson bears the burden of proving the elements of her retaliation claim at trial, at the summary judgment stage, Ms. Johnson must produce evidence sufficient to demonstrate that Ms. Masucci knew about Ms. Johnson's accommodation request.  Because Ms. Johnson has failed to do so, UAHSF is entitled to summary judgment on Ms. Johnson's retaliation claim.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) ("[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (quotation omitted and alterations added).